RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHASE HOWSE,

*Plaintiff-Appellant*,

*v.*

THOMAS HODOUS and BRIAN MIDDAUGH, individually
and in their official capacities as employees of the
City of Cleveland, Ohio; CITY OF CLEVELAND, OHIO,

*Defendants-Appellees*.

No. 19-3418

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cv-01714—Donald C. Nugent, District Judge.

Argued: January 29, 2020

Decided and Filed: March 18, 2020

Before: COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** James L. Hardiman, Cleveland, Ohio, for Appellant. Elena N. Boop, CITY OF
CLEVELAND, Cleveland, Ohio, for Appellees Hodous and Middaugh. Timothy J. Puin, CITY
OF CLEVELAND, Cleveland, Ohio, for Appellee City of Cleveland. **ON BRIEF:** James L.
Hardiman, Cleveland, Ohio, for Appellant. Elena N. Boop, Elizabeth M. Crook, CITY OF
CLEVELAND, Cleveland, Ohio, for Appellees Hodous and Middaugh. Timothy J. Puin, CITY
OF CLEVELAND, Cleveland, Ohio, for Appellee City of Cleveland.

        THAPAR, J., delivered the opinion of the court in which COOK, J., joined, and COLE,
C.J., joined in part. COLE, C.J. (pp. 13–21), delivered a separate opinion dissenting in part.

_____

**OPINION**

_____

THAPAR, Circuit Judge.   Shase Howse sued several police officers and the City of Cleveland for alleged violations of the Fourth Amendment.  The district court dismissed the suit, concluding that neither the officers nor the City did anything wrong.  We affirm.

I.

One summer night in 2016, Howse was walking home from a convenience store.  Along the way, Howse says an unidentified Cleveland Police officer approached and asked whether he had any weapons.  Howse said no.  The John Doe officer then patted him down and searched his pockets.  After finding no contraband, the officer told Howse that he could leave.

When Howse got home, he began climbing the steps on his front porch.  The parties dispute what happened next.

As Howse tells it, several men (two of whom he later identified as Officers Thomas Hodous and Brian Middaugh) pulled up in an unmarked vehicle.  Middaugh asked Howse if he lived at the house.  Howse replied that he did.  Middaugh asked Howse if he was *sure* that he lived there.  Howse said something like "yes, what the f---" in response.  R. 33-1, Pg. ID 810. That prompted Middaugh to comment that Howse had a smart mouth and a bad attitude. Middaugh then got out of the car, walked toward the porch, and asked Howse (yet again) if he was sure that he lived there.  Again, Howse responded yes.

Things escalated from there.  Middaugh told Howse to put his hands behind his back and that he was going to jail.  Howse disobeyed Middaugh's command to put his hands behind his back.  Instead, Howse yelled that he hadn't done anything wrong and that he lived at the house. Middaugh ran onto the porch, grabbed Howse (who at that point was screaming at the top of his lungs), and threw him down.  When Middaugh was on top of him, Howse realized that Middaugh was a police officer.  Middaugh, with help from Hodous, then tried to handcuff Howse.  But Howse, in his own words, was resisting arrest by screaming and "stiffening up" his

body.  R. 25-3, Pg. ID 414, 415.  Howse says he never tried to hit, push, or fight with the officers.  And he claims that he "didn't do anything that would be considered offensive" to the officers.  *Id.* at 416.

At this point, Howse's mother (who owned the house) showed up.  She had heard some commotion and rushed to the front porch.  When she arrived, she saw a "chaotic" scene:  a man in dark clothing straddled Howse and another man struck Howse with a closed fist, which caused Howse's head to strike the porch.  R. 29-4, Pg. ID 735.  She asked the men (who she later realized were police officers) to stop beating her son—she kept explaining that he lived at the house.  After things settled down, the officers put Howse in a police car and took him to jail.

The officers tell a different story.  That night, Hodous and Middaugh (along with another officer) were patrolling the area where Howse lived—an area known for violence, drugs, and gang activity.  While driving in an unmarked vehicle, they saw Howse lingering suspiciously on the front porch of a house.  Howse looked nervous when he saw the unmarked vehicle.  Middaugh thought the house was vacant because it appeared to be boarded up and there were bars on the doors.

Based on his training and experience, Middaugh suspected that Howse might be engaged in criminal activity.  So Middaugh asked Howse whether he lived there.  Howse said he did.  Middaugh wanted to investigate more, so he got out of the car, walked toward Howse, and asked him if he was trying to break in.  Middaugh doesn't remember exactly what Howse said in response, but he does remember that Howse said "f---" along with some other words.  R. 25-1, Pg. ID 176.  (Hodous, for what it's worth, recalls Howse saying "f--- you" and "leave me the f--- alone." R. 25-2, Pg. ID 303.)

When Middaugh reached the front porch, Howse clenched his fists and "squared up" into a fighting stance.  R. 25-1, Pg. ID 177.  Middaugh, afraid that Howse wanted to fight, told Howse to put his hands in the air.  Howse ignored that instruction and instead motioned towards his pockets, which prompted Middaugh to grab Howse's arm.  Hodous joined Middaugh and tried to restrain Howse, who was grabbing at the officers and flailing around.  Howse struck Hodous in the chest.  Howse also tried to rip off Middaugh's flashlight and handcuff case.  So

Middaugh used a leg sweep to take Howse to the ground. Even while on the ground, Howse resisted the officers by burying his hands underneath his chest. The officers eventually handcuffed him and put him in a police vehicle. It wasn't until Howse's mother showed up, the officers claim, that they found out that Howse did in fact live at the house.

(While the parties have offered two vastly different accounts of what happened, we must view the facts in the light most favorable to Howse. *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011). That means we ignore what the officers allege happened to the extent that it conflicts with what Howse alleges happened that night. So while we tell both sides for the sense of completeness, we accept the plaintiff's version when deciding whether the officers are entitled to qualified immunity.)

Keeping that principle in mind, we can continue with some undisputed facts. After Howse was booked into jail, Middaugh signed a complaint charging Howse with assaulting a police officer. Hodous and Middaugh then wrote up "Use of Force" reports detailing what happened on the front porch. These reports said that Howse resisted arrest and struck the officers. After a few days, Howse posted bond and was released. Later, a grand jury indicted him on two counts of assault along with one count of obstruction of official business. But the State eventually dismissed the charges.

Howse then sued Hodous and Middaugh under 42 U.S.C. § 1983 for violating his Fourth Amendment rights and for committing assault and battery under Ohio law. He also sued the City of Cleveland, claiming that the City was responsible for the Fourth Amendment violations. The district court granted summary judgment for the defendants. This appeal followed.

II.

Howse brought three claims against Hodous and Middaugh: (1) a claim for excessive force under the Fourth Amendment, (2) a claim for malicious prosecution under the Fourth Amendment, and (3) a claim for assault and battery under Ohio law. We address each claim in turn.

*Fourth Amendment—Excessive Force*. Howse first argues that Hodous and Middaugh violated the Fourth Amendment when they stopped him without reasonable suspicion and used excessive force during his arrest. In response, the officers ask for qualified immunity.

Qualified immunity shields law enforcement officers from civil liability unless the officers (1) violated a statutory or constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Howse must show that both prongs are met here. *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

We begin our analysis with the second prong—by asking whether the unlawfulness of the officers' conduct was clearly established at the time they approached and arrested Howse. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Clearly established" means that the law is so clear at the time of the incident that every reasonable officer would understand the unlawfulness of his conduct. *Wesby*, 138 S. Ct. at 589. That's a deferential rule. And for good reason: officers often find themselves in positions where they must make split-second decisions in dangerous situations. In those crucial seconds, officers don't have the time to pull out law books and analyze the fine points of judicial precedent. To avoid "paralysis by analysis," qualified immunity protects all but plainly incompetent officers or those who knowingly violate the law. *Rudolph v. Babinec*, 939 F.3d 742, 756 (6th Cir. 2019) (Thapar, J., concurring in part and dissenting in part).

With all this in mind, we consider Howse's claim. Howse argues that the officers violated his clearly established right to be free from "unreasonable government intrusions." Appellant Br. at 18. But that frames the "clearly established" test at too high a level of generality. The law must be specific enough to put a reasonable officer on clear notice that his conduct is unlawful. *See Wesby*, 138 S. Ct. at 590. The right to be free from "unreasonable government intrusions" is much too vague to do that.

Instead, we must examine the *particular* situation that Hodous and Middaugh confronted and ask whether the law clearly established that their conduct was unlawful. To answer this question, we must ask whether every reasonable officer would know that law enforcement

cannot tackle someone who disobeyed an order and then use additional force if they resist being handcuffed. Importantly, this question asks about the lawfulness of conduct under the Fourth Amendment. And in that context, the Supreme Court has stressed "the need to identify a case where an officer acting under similar circumstances" was found "to have violated the Fourth Amendment." *Id.* (cleaned up). Without such a case, the plaintiff will almost always lose. *See id.*

Howse hasn't identified any case that addresses the conduct at issue here (and we aren't aware of any either). Instead, Howse cites a single case in support: *Terry v. Ohio*, 392 U.S. 1 (1968). But that case does him no good. *Terry* held that a search did *not* violate the Fourth Amendment because the law enforcement officer reasonably believed that the suspects were engaged in criminal activity and might be armed and dangerous. *Id.* at 30–31. The case has nothing to do with excessive force. So *Terry* doesn't clearly establish that law enforcement cannot tackle a non-compliant suspect and use additional force against him if he resists arrest. *Cf. Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015) (explaining that using a taser or a knee strike against someone who is actively resisting arrest does not qualify as excessive force).

Because the alleged unlawfulness of the officers' conduct wasn't clearly established, the officers are entitled to qualified immunity.[1]

---

[1]The dissent concludes otherwise after it frames the question as follows: "whether it violates a clearly established constitutional right for an officer to throw a person to the ground in order to arrest that person without probable cause." Dissenting Op. at 16 (footnote omitted). Of course, it's true that an officer cannot *arrest* someone without probable cause. But it's also true that an officer doesn't need probable cause to *stop* someone—reasonable suspicion is enough. *Terry*, 392 U.S. at 30–31. Thus, the level of justification depends on whether the officer is carrying out a stop or an arrest. *See United States v. Martinez*, 808 F.3d 1050, 1053 (5th Cir. 1987).

The mere act of handcuffing someone doesn't transform a stop into an arrest. That's because an officer *may* temporarily handcuff someone during a *Terry* stop "so long as the circumstances warrant that precaution." *United States v. Foster*, 376 F.3d 577, 587 (6th Cir. 2004). So it isn't obvious that the officers were effectuating an arrest (rather than an investigatory stop) when they tackled and handcuffed Howse.

Acknowledging this point, the dissent cites *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 591 (6th Cir. 1994) to show that the officers arrested Howse when they initially threw him to the ground. But *Centanni* cuts *against* the dissent's conclusion. That's because *Centanni* says that an arrest generally doesn't occur until the officers physically remove the suspect from the scene. *See id.* Of course, the officers hadn't removed Howse from the scene when they initially threw him down. So that would mean the officers *didn't* need probable cause until they removed him from his home and took him to the station.

*Fourth Amendment—Malicious Prosecution*.    Howse next argues that Hodous and Middaugh committed malicious prosecution when they helped prosecutors charge him with two counts of assault and one count of obstructing official business.  To win on that claim, Howse must show (among other things) that the officers helped start a prosecution against him without probable cause.  *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017).  Probable cause exists when there are enough "facts and circumstances" to make a reasonable person believe that "the accused was guilty of the crime charged."  *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (cleaned up).

To begin with, there's enough evidence for a reasonable person to believe that Howse obstructed official business.  Someone obstructs official business when he acts with the purpose of obstructing or delaying an officer from performing a lawful duty and he actually hampers or impedes the officer.  Ohio Rev. Code § 2921.31; *State v. Henry*, 110 N.E.3d 103, 116 (Ohio Ct. App. 2018).  Ohio courts have interpreted this crime broadly.  For example, someone may be convicted if they make it "more difficult" for law enforcement to gain control of a situation, *State v. Florence*, No. CA2013-08-148, 2014 WL 2526069, at *3 (Ohio Ct. App. June 2, 2014), or interfere with an officer's attempt to arrest someone, *State v. Overholt*, No. 2905-M, 1999 WL 635717, at *4 (Ohio Ct. App. Aug. 18, 1999).  Here, Howse himself admitted that he tried to make it more difficult for the officers to arrest him by stiffening up his body and screaming at the top of his lungs.  That's enough to provide probable cause for the obstructing-official-business charge.

And because there was probable cause for *that* charge, Howse cannot move forward with *any* of his malicious-prosecution claims.  According to our circuit, malicious-prosecution claims are based on the Fourth Amendment.  *Spurlock v. Satterfield*, 167 F.3d 995, 1006, 1006 n.19 (6th Cir. 1999).[2]    Although we call it a claim for malicious prosecution, that's a bit of a

---

Even if we assume the officers carried out an arrest unsupported by probable cause, that doesn't change the outcome here.  Howse still needs a case putting the officers on clear notice that their use of force was excessive.  And we still aren't aware of one.

[2]A majority of the Supreme Court has not yet decided whether there is a cognizable claim for malicious prosecution under the Fourth Amendment. Justice Alito, writing in dissent in *Manuel v. City of Joliet*, reasoned that malicious-prosecution claims do not arise under the Fourth Amendment.  137 S. Ct. 911, 923 (2017) (Alito, J., dissenting).  If they are constitutionally cognizable at all, he said, they must arise under another constitutional

misnomer. After all, our circuit doesn't even require a showing of malice to succeed on such a claim. *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010). It's really a claim for an "unreasonable prosecutorial seizure" governed by Fourth Amendment principles. *Id.* (cleaned up); *see also Gregory v. City of Louisville*, 444 F.3d 725, 748–49 (6th Cir. 2006).

Under the Fourth Amendment, an officer can seize someone so long as he has probable cause that the person has violated the law. For example, suppose a police officer clocks someone driving twenty miles per hour over the speed limit. The officer pulls over the driver and offers two reasons for the stop. The first is that he saw the driver speeding. The second is that he suspected that the driver might have illegal drugs. Even if there's nothing to support the officer's hunch about drugs, the officer still has probable cause to stop the car for speeding. *See Whren v. United States*, 517 U.S. 806, 811–13 (1996). So the seizure doesn't violate the Fourth Amendment even though one of the justifications for the stop was meritless.

That's why the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest. A false arrest, as its name suggests, is simply an arrest which isn't supported by probable cause. *Webb*, 789 F.3d at 666. The Supreme Court has held that the reason the officer gives for an arrest need not be the reason which *actually* provides probable cause for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004). If the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested. *Id.* at 155. So it follows that when an officer arrests someone based on multiple charges, "it is not relevant whether probable cause existed with respect to each individual charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.). What matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure). *Id.* As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward. *See Alman v. Reed*, 703 F.3d 887, 900 n.3 (6th Cir. 2013);

---

provision—presumably the Due Process Clause. *Id.* But because our circuit has held that a federal malicious-prosecution claim does arise under the Fourth Amendment (and not the Due Process Clause), we are bound by that decision and must consider Fourth Amendment principles when defining the scope of the claim. *See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010) (refusing to import the common-law malice requirement into a federal malicious-prosecution claim because that would conflict with Fourth Amendment principles).

*see also Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006).

The same rules apply here. After all, claims for false arrest and malicious prosecution both arise under the Fourth Amendment. They both hinge on an alleged unreasonable seizure. And they both rise and fall on whether there was probable cause supporting the detention. Indeed, just like in the context of false arrests, a person is no more seized when he's detained to await prosecution for several charges than if he were seized for just one valid charge. In the end, there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim.[3]

Because there was probable cause to prosecute Howse for obstructing official business, he cannot proceed on his other malicious-prosecution claims.

*Ohio law—Assault & Battery.* Howse also sued Hodous and Middaugh for assault and battery under Ohio law. For this claim, Howse must show (1) that the officers acted with an intent to cause harmful or offensive contact and (2) that such contact occurred (that's battery) or that he *thought* that such contact would occur (that's assault). *See Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988); *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio Ct. App. 1993).

The officers once again claim that they're immune from suit. This time, they point to an Ohio statutory provision which provides a general grant of immunity to government employees. Ohio Rev. Code § 2744.03(A)(6). That provision creates "a presumption of immunity" that can be overcome only in a handful of circumstances. *Hoffman v. Gallia Cty. Sheriff's Office*, 103 N.E.3d 1, 13 (Ohio Ct. App. 2017).

---

[3]The contrary conclusions of other circuits don't persuade us otherwise. The Second Circuit has held that each criminal charge must be supported by probable cause. *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). Otherwise, the court reasoned, an officer might tack on many additional (meritless) charges. *Id.*; *cf. Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 681–83 (7th Cir. 2007). Tacking on meritless charges, however, does not change the nature of the seizure. If hypothetically it were to change the length of detention, that would be a different issue. But the plaintiff has not presented any evidence that the additional assault charges caused Howse to suffer longer detention.

Howse can't proceed to trial on his assault-and-battery claim because he hasn't challenged the officers' statutory immunity. Indeed, "the burden necessary to deny immunity to [law enforcement] officers is onerous." *Argabrite v. Neer*, 75 N.E.3d 161, 169 (Ohio 2016). And Howse offers nothing to meet that burden. He hasn't argued that any exception to immunity applies here. Nor has he cited a single Ohio case to support such an argument. Because Howse makes no argument on the matter, we conclude that the officers are entitled to statutory immunity. *See Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 611 (6th Cir. 2016).

III.

Howse also brought a § 1983 claim against the City of Cleveland. He says that Cleveland is responsible for the alleged constitutional violations by Hodous, Middaugh, and the John Doe officer.

Municipalities may be held liable under § 1983 for their own unlawful acts. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). To be liable, though, it's not enough that a municipality's employees violated someone's constitutional rights. Instead, the plaintiff must show that the municipality *itself* caused the constitutional violation through one of its own customs or policies. *Id.* at 694. One way to prove liability is to show a municipal policy of inadequate training that led to the constitutional harm. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Another way is to show a municipal custom of tolerating rights violations that led to that constitutional harm. *Id.*

Howse argues both theories on appeal. He claims that Cleveland inadequately trained its officers about how to use proper force. And he also claims that the City adopted a custom of tolerating constitutional violations.

To start, Howse faces an uphill battle in trying to prove that Cleveland's (alleged) inadequate training caused his (alleged) constitutional injuries. That's because he must show (1) the training program did not adequately prepare the officers for the tasks they must perform, (2) the inadequacy resulted from the municipality's deliberate indifference, and (3) the

inadequacy either closely related to or caused Howse's injury. *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018).

Howse cannot show that these three elements are met here. Cleveland's training academy's standards exceed state requirements, and Cleveland's police force has explicit written policies instructing officers not to use excessive force. Howse offers no evidence to the contrary—at least relevant to the claims here. On top of that, Howse hasn't shown how any inadequacy in the training program led to his constitutional injuries. This causation requirement is "rigorous." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997). And it's not met here because Howse hasn't offered any argument that links the legal harm he allegedly suffered back to Cleveland. *See Puckett*, 833 F.3d at 611.

Nor can Howse succeed under a custom-of-inaction theory. To win on this claim, Howse would need to show that Cleveland had notice (or constructive notice) of a "clear and persistent pattern" of unlawful activity. *Thomas*, 398 F.3d at 429 (cleaned up). Then he would need to show that Cleveland tacitly approved of that unlawful activity by doing nothing. *Id.* And *then* he would need to show that Cleveland's tacit approval was the moving force behind his constitutional violation. *Id.* Howse points to a Department of Justice memo as evidence of a pattern of unlawful activity. But even assuming that's enough (and we're not sure it is), Howse hasn't shown that Cleveland approved of that unlawful activity *or* that any such approval caused Howse to suffer a constitutional injury. Mere blanket assertions that Cleveland "tolerated" or "condoned" officer misconduct aren't enough. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (cleaned up). On the contrary, Cleveland has taken affirmative steps to combat the unlawful use of excessive force. Those steps include a thorough use-of-force policy and active enforcement of that policy. Take this case. After Hodous and Middaugh filed their Use of Force reports, several other officers reviewed those reports to make sure that the force used was reasonable.

In sum, Howse hasn't shown that Cleveland can be held responsible for any constitutional wrongs that Hodous, Middaugh, or the John Doe might have committed.

\*\*\*

We affirm.

————————————————

**DISSENTING IN PART**

————————————————

COLE, Chief Judge, dissenting in part.  At this stage, we are required to view the facts in the light most favorable to Howse.  *See, e.g.*, *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015).  This proposition of law is not in dispute.   The majority, like the district court before it, acknowledges that when the officers' version of events conflicts with Howse's, we must resolve that factual conflict in Howse's favor.  (Maj. Op. at 4).  Many of the majority's conclusions, however, are predicated on resolving key factual disputes in the officers' favor.  Properly considering those factual disputes under the standard our precedent mandates compels a different conclusion than the majority's.  Specifically, I find that the facts viewed in the light most favorable to Howse demonstrate that Middaugh executed an arrest unsupported by probable cause using excessive force, and then, along with Hodous, spurred a prosecution of Howse by making false statements about the incident.  As such, although I agree with the majority's approach to Howse's municipal liability claims, I respectfully disagree with its disposition of Howse's excessive force, malicious prosecution, and state law claims.

**I.       The Facts Viewed in the Light Most Favorable to Howse**

On July 28, 2016, Howse was on the porch of the home he shared with his mother, had his key in the gate, and was in the process of opening the gate when Middaugh and Hodous, who were not in uniform, pulled up in an unmarked car.  The officers asked Howse if he lived at the residence, and Howse responded that he did.  The officers started to pull away but then pulled back and asked Howse if he was sure that he lived at the home.  Howse, agitated, responded to this second inquiry, "Yes, this is my home.  What the f—."  (R. 25-3, PageID 411.)

Once Howse used the expletive, Middaugh commented that Howse had a "smart mouth." (R. 25-3, PageID 411.)  At this point, Howse repeatedly stated, "I live here.  I live here." (R. 25-3, PageID 411.)  Middaugh then approached Howse on the porch and ordered Howse to put his hands behind his back, stating that Howse was "going to jail."  As Howse continued to protest that he lived at the residence and was not doing anything wrong, Middaugh threw Howse to the

ground and attempted to arrest him.  As the commotion continued, Howse's mother emerged from the residence and protested that Middaugh was attempting to arrest her son.  When Howse looked up to see his mother, Middaugh struck him twice in the back of the neck.  During Middaugh's attempt to arrest him, Howse was screaming at the top of his lungs and stiffened his arms to make it difficult for Middaugh to place the handcuffs on Howse.  Howse never attempted to hit or push Middaugh, remaining nonviolent throughout the entire incident.  With regard to Hodous, Howse testified that Hodous "was just there." (R. 25-3, PageID 418.)  Howse explained that Middaugh made the arrest while Hodous and another officer were "standing there." (R. 25-3, PageID 419.)

Once Howse was placed in handcuffs, he was taken to jail, where he stayed for two nights and three days.  As the majority notes, Hodous and Middaugh prepared reports detailing the use of force, which included statements that Howse actively resisted arrest and struck the officers as they attempted to investigate the situation.  Although a grand jury indicted Howse on two counts of assault and one count of obstructing official business, the state ultimately dismissed all charges against Howse.

## II.     Excessive Force Claim

First, it is important to identify the point in the timeline at which the allegedly unlawful conduct took place, as the Fourth Amendment analysis is different for an arrest than it is for an investigatory stop.  Much of the majority's analysis treats the interaction between Howse and the officers as a *Terry* stop.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  It is true that there may have been a brief moment where Howse's interaction with the police may have qualified as an investigatory stop and required only reasonable suspicion under *Terry*, but Howse does not claim that Middaugh violated his rights during a *Terry* stop.  Rather, he claims that the police used excessive force, and all parties agree that Middaugh deployed the force in question while executing an arrest.  When an investigatory stop "ripens into an arrest," the arresting officer "must show probable cause." *Brown*, 779 F.3d at 412 (internal citation omitted).

Here, the officers lacked probable cause to arrest Howse.  In justifying the encounter, the officers note that Howse was in a high-crime area and that their experience led them to believe

that the vacant-looking house could have been a drug house. Middaugh testified that Howse's behavior reminded him of another arrest where he "believed [the suspect] was tucking something in his waistband, a gun . . . made eye contact with the officer in an undercover car, touched his waistband, looked away, and went up on a porch that was not his." (R. 25-1, PageID 160–61.) In the prior case, the individual, once confronted, had attempted to flee and disposed of a gun in the process.

Even if we assume that these factors could support an investigatory stop, as the majority does, they certainly do not support probable cause to make an arrest. "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (internal citation and quotation marks omitted). It requires "less than *prima facie* proof but more than mere suspicion." *Hoover v. Walsh*, 682 F.3d 481, 499 (6th Cir. 2012) (internal citation and quotation marks omitted).

Crucially, unlike the individual in Middaugh's prior case, Howse never attempted to flee or revealed himself to be armed. Prior to Middaugh telling Howse he was going to jail and attempting to arrest him, Howse had done nothing illegal at all, and the officers do not allege otherwise. Instead, Howse had only repeatedly asserted the (true) fact that he lived at the residence and sworn at the plainclothes officers when they kept asking him the same question. In fact, as Middaugh attempted to arrest Howse, his *only* professed basis for doing so was Howse's profanity.

There are many actions a person could take that would support a determination that an officer has probable cause to make an arrest, but responding to plainclothes officers who are asking the same question over and over with a "smart mouth" is not one of them. *See Wilson v. Martin*, 549 F. App'x 309, 311 (6th Cir. 2013) (finding that where a gesture was "crude, not criminal . . . officers were patently without probable cause to arrest [the person who made the gesture] for it"); *see also Cohen v. California*, 403 U.S. 15, 25 (1971) ("For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely

because government officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.")

For additional evidence that the officers lacked probable cause to arrest Howse, look no further than the crimes he was ultimately charged with: two counts of assault on a police officer and one count of obstructing official business.  The record is completely devoid of any suggestion that Howse assaulted the officers or obstructed official business *before* he was arrested.  Any factual allegation that would have supported those charges had to have arisen *after* the officers began the arrest.  Thus, there was no probable cause at the point at which Middaugh endeavored to arrest Howse.

I turn next to the question of qualified immunity.  I concur with the majority's conclusion that Hodous is entitled to qualified immunity.  Howse admits that Hodous did not physically participate in Howse's arrest and it was only Middaugh who threw Howse to the ground to effectuate the arrest.  As for Middaugh, the majority correctly states that, in order to overcome an assertion of qualified immunity, Howse must show that the officers violated a clearly established constitutional right.  *E.g., District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018).  I also agree that a right is clearly established only when every reasonable officer would understand that what they are doing is unlawful.  *Id.*  My disagreement with the majority stems from its application of that standard to this record.  The majority asks, "whether every reasonable officer would know that law enforcement cannot tackle someone who disobeyed an order and then use additional force if they resist being handcuffed."  (Maj. Op. at 6.)  We should instead be asking whether it violates a clearly established constitutional right for an officer to throw a person to the ground in order to arrest[1] that person without probable cause**.**  I conclude that the answer to that question is yes on the basis that follows below.  Accordingly, I would deny Middaugh qualified immunity.

---

[1]The majority says "it isn't obvious that the officers were effectuating an arrest (rather than an investigatory stop) when they tackled and handcuffed Howse" because, in some cases, officers may be permitted to handcuff a person as part of an investigatory stop.  (Maj. Op. at 8, fn. 1.)  Contrary to the majority's suggestion, however, I do not reach the conclusion that Middaugh was arresting Howse because he handcuffed him, as I agree that our precedent allows for the use of handcuffs during some investigatory stops.  Rather, I conclude that Middaugh was arresting Howse because of Middaugh's statement that Howse was "going to jail."  (R. 25-3, PageID 411.)  We have previously held that "[T]he removal of a suspect from the scene of the stop generally marks the point at which the Fourth Amendment demands probable cause."  *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 591

"The right to be free of excessive force, as a general matter, is clearly established." *Brown*, 779 F.3d at 419 (citing *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011)). To determine whether force is excessive, we consider the "objective reasonableness" of the force "in light of the totality of the circumstances confronting the defendants[.]" *Brown*, 779 F.3d at 418 (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)). When we make this objective inquiry, we look at three issues: (1) the severity of the crime that prompted the officers to conduct the arrest; (2) the extent to which the suspect poses an immediate threat to the arresting officers; and (3) whether the suspect is either actively resisting arrest or attempting to evade arrest by fleeing. *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

And clearly established law on those factors compels the conclusion that the force used in throwing Howse to the ground was excessive. First, Howse did not commit (and Middaugh had no reason to believe he had committed) any crime. *See, e.g.*, *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (noting Fourth Amendment right to be free from arrest without probable cause is clearly established). Second, Middaugh cannot point to evidence that Howse posed an immediate threat to the safety of any officer. *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (observing that "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" is clearly established). Third, Howse did not resist or attempt to evade arrest, as he was immediately thrown to the ground by Middaugh. Howse stiffening his arms to resist being handcuffed does not change the conclusion on this factor, as he did not do so until Middaugh had already used force to throw Howse to the ground. Based on this analysis, I would find that Middaugh violated Howse's clearly established Fourth Amendment right to be free from excessive force and deny qualified immunity to Middaugh on Howse's excessive force claim.

## III.    Malicious Prosecution Claim

The Supreme Court tells us that the tort of malicious prosecution is "entirely distinct" from the tort of false imprisonment, which includes false arrest, as the former remedies the

---

(6th Cir. 1994). Here, Middaugh's intent to remove Howse from the scene, and specifically to take him to jail, demonstrates that Middaugh was attempting to effectuate an arrest.

wrongful institution of legal process and the latter remedies detention in the absence of legal process. *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (internal citation and quotation marks omitted). Here, the majority determines that these "entirely distinct" claims must necessarily be analyzed in the exact same way, despite myriad reasons to follow the Supreme Court's direction and treat them differently. And it does so sua sponte, absent the urging of any party, and without the support of a single decision of this court or any other. I decline to join the majority in making this leap to new legal ground.

We have never indicated that a malicious prosecution claim fails so long as there is probable cause to prosecute on one of several charges. In every prior case where there were some valid charges on the indictment and we were tasked to consider a malicious prosecution claim on acquitted charges, we separately analyzed whether probable cause supported the charge that was the subject of the claim. In *Barnes v. Wright*, we addressed a case where the plaintiff was convicted on the other charges for which he was indicted but nonetheless brought a malicious prosecution claim concerning the charge on which he was acquitted. 449 F.3d 709, 713 (6th Cir. 2006). Rather than dismiss the matter immediately due to the existence of valid charges on the indictment, we undertook an analysis of whether probable cause supported the charge that was the subject of the malicious prosecution claim. *Id.* at 716–17. In *Cook v. McPherson*, we were similarly confronted with a case where the plaintiff had been convicted of all but one of the charges he faced in state court. 273 F. App'x 421, 422 (6th Cir. 2008). There, we affirmed the dismissal of the malicious prosecution claim because the plaintiff could not point to evidence that the indictment returned against him on the challenged charge had been obtained by fraud or other police misconduct, not because the plaintiff had been separately convicted on a different charge. *Id.* at 424.

Additionally, other circuit courts have explicitly rejected the majority's approach, and with good reason. The Second Circuit has concluded that a malicious prosecution claim can proceed even when a separate charge is supported by probable cause. *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). That court observed that the majority's approach would allow prosecutors to tack on additional meritless charges in any case where they had probable cause to prosecute for a single offense. *Id.* The Seventh Circuit held that "a malicious prosecution claim

is treated differently from one for false arrest[.]" *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).  It aptly noted:

> An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed. But when it comes to prosecution, the number and nature of the charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase.

*Id.*  Other circuits have joined this conclusion.  *See Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007) (declining to "establish legal precedent of such broad application that it would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause for the arrest of the plaintiff on any one charge"); *Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998) (concluding that a malicious prosecution claim could proceed even when the plaintiff had already been convicted of other charges included in the same indictment).

I join these circuits and dispute the majority's contention that "there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false arrest claim."  (Maj. Op. at 9–10.)  As a practical matter, the precise nature of a prosecution matters a great deal to the defendant who must grapple with its consequences.  And it is a reality that no two prosecutions share the exact same character.  Some prosecutions are for one charge, others for several.  Some prosecutions can result in incarceration, others only a fine.  Some prosecutions are based on a straightforward set of facts, others are far more complicated.  The addition of more charges than probable cause can support to a prosecution changes the nature of the case, doing so in a way that negatively impacts the defendant.

We can imagine, for example, that putting on a defense against multiple charges requires more resources than defending against a single one.  We might also note that the severity of the crimes charged could have psychological impacts for the defendant, as well financial ones: it may impact the amount the defendant must post in bail in order to maintain his liberty.  We ought further consider that a defendant facing a list of charges where only a single one is supported by probable cause would be in a much worse negotiating posture for plea bargaining than one who is only bargaining over the disposition of a single charge.  It follows that the

damages suffered by a defendant in an unlawful prosecution would depend largely, if not entirely, on which specific charges are at issue in that prosecution. In stark contrast, a false arrest, as the Seventh Circuit observed, does not change in character simply because the officer making the arrest believed that she had probable cause to arrest for more charges then she did in reality. *See Holmes*, 511 F.3d at 682. I therefore believe that we must address the merits of Howse's claim that he was maliciously prosecuted for assaulting Hodous and Middaugh.

I further believe that when we reach this claim, summary judgment is inappropriate given this record. Perhaps the most ardently disputed fact in this case is whether Howse struck or attempted to strike the officers as they confronted him on his own porch; the officers say he did, while Howse says he did not. Given that we view disputed facts in the light most favorable to Howse, we proceed on the assumption that Howse did not strike either officer. A malicious prosecution claim survives where an officer knowingly or recklessly makes a false statement or falsifies or fabricates evidence. *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017). A natural corollary of our assumption that Howse's version of the events is the true one is that Hodous and Middaugh's statements that spurred the prosecution of Howse for assault are false. I would therefore hold that the malicious prosecution claim should proceed.

## IV.    State Law Assault and Battery Claim

The majority disposes of Howse's state law assault and battery claim on the basis that Howse has not challenged the officers' statutory immunity under Ohio law. Ohio Rev. Code 2744.03(A)(6). As with the excessive force claim, I find that Howse has a plausible assault and battery claim against Middaugh, and I would allow that claim to proceed.

Ohio Rev. Code § 2744.03(A)(6)(b) provides that there is an exception to the general immunity the officers enjoy under state law when officers act "with a malicious purpose, in bad faith, or in a wanton or reckless manner." Again viewing the facts in the light most favorable to Howse, I believe that Howse has met his burden of overcoming the claim of immunity. By alleging that Middaugh threw him to the ground in order to effect an arrest made without probable cause that Howse was not resisting, Howse has created a genuine issue as to whether Middaugh acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" and,

thus, overcome his burden to show that Middaugh should be denied statutory immunity. We have previously observed that when there is a question as to whether an officer acted unreasonably under the Fourth Amendment, there is also a question as to whether he acted recklessly under Ohio Rev. Code § 2744.03(A)(6)(b). *See Burgess*, 735 F.3d at 480. As I find that Howse's excessive force claim should proceed, I find that this claim should as well.

I respectfully dissent.