NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0523n.06

No. 24-5228

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LANDON HARROD,

    Plaintiff-Appellant,

v.

KENYA LEE; ROCKY RUEHLING; CITY OF TULLAHOMA, TENNESSEE,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 13, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Police arrested Landon Harrod while responding to a 911 call about a domestic disturbance. Harrod eventually pleaded guilty to resisting and evading arrest. Then he sued Officer Kenya Lee and Corporal Rocky Ruehling, who participated in his arrest, for violating his Fourth Amendment rights. The defendants moved for summary judgment, arguing that they were entitled to qualified immunity, and the district court granted their motion. Because Harrod has not shown the officers violated his clearly established Fourth Amendment rights, we affirm.

## BACKGROUND

Landon Harrod and his girlfriend, Ashley Brown, lived together in an apartment in Tullahoma, Tennessee. On September 6, 2020, Harrod and Brown got into a heated argument in the apartment. Things escalated and Harrod stepped out. When he returned, he realized Brown had locked him out, and he started kicking the door.

Startled by the commotion, a neighbor called 911. The caller reported that a man was kicking down a woman's door as she tried to hold it closed. Moments later, the caller told dispatch the man had entered the apartment and expressed fear he "was going to hurt" the woman. Audio Rec. at 01:00–02:24. Dispatch sent Officer Kenya Lee and Corporal Rocky Ruehling to investigate.

Officer Lee arrived first. As she approached the apartment building, Officer Lee heard banging from upstairs and, through an upstairs foyer window, she saw Harrod standing outside the apartment. Then Officer Lee watched Harrod walk downstairs and emerge from the building.

When Harrod and Officer Lee crossed paths, she reached her arm out to stop him and "asked him what was going on." Lee Dep., R. 33-2, PageID 200.[1] He replied, "nothing," and continued walking past her. Harrod Dep., R. 33-1, PageID 141. Then, she grabbed the front of his shirt. He turned to face her but didn't stop; instead, he walked backwards away from her. At some point, Harrod asked Officer Lee to "please remove [her] hand." Audio Rec. at 08:25–08:27.

As they stepped into the apartment building's parking lot, Officer Lee grabbed one of Harrod's hands and tried to turn him to face a parked car. Harrod pulled his hand away. Officer Lee pinned him to another car and tried again to restrain him. Harrod resisted actively for about thirty seconds but, eventually, he appeared to acquiesce. Then, just as Officer Lee reached for her handcuffs, Harrod broke free and sprinted across the lot, into a field. Officer Lee tried to run after

---

[1] Soundless surveillance footage captured Officer Lee's interactions with Harrod. Though we don't know everything they said to each other, we have a recording of the call between Corporal Ruehling and the 911 caller. In it, we hear Officer Lee communicating with Corporal Ruehling via radio, and at times, we hear Harrod talking to Officer Lee during her radio messages. Where there are gaps in the surveillance video and audio recording, we construe the facts in the record, including the parties' deposition testimony, in the light most favorable to Harrod. *See Heeter v. Bowers*, 99 F.4th 900, 911–12 (6th Cir. 2024).

him and kept ahold of his shirt, but moments later, she lost her grip, stumbled, and fell to the ground. She suffered a bruised knee and a torn ligament.

While driving to the scene, Corporal Ruehling contacted the 911 caller and kept her on the phone. The caller told him the man she observed kicking the door wore an orange shirt, and later, that he was "fighting the cops." Ruehling Dep., R. 33-3, PageID 210. As he sped into the parking lot, Corporal Ruehling "saw the very tail end of the encounter between Mr. Harrod and Officer Lee." *Id.* at PageID 208. He watched Officer Lee fall to the ground and Harrod run away.

Later that day, Harrod turned himself in. Corporal Ruehling secured warrants to arrest him for resisting arrest and aggravated assault. A Tennessee grand jury indicted Harrod for aggravated assault, resisting arrest, and evading arrest. On May 18, 2022, he pleaded guilty to resisting and evading arrest. In exchange for his plea, the prosecution dropped the charge of aggravated assault. The same day, the state trial court sentenced Harrod to just under a year of probation.

Before he pleaded guilty in state court, Harrod brought an action under 42 U.S.C. § 1983 against Officer Lee and Corporal Ruehling, alleging they violated his Fourth Amendment rights. According to Harrod, Officer Lee unlawfully stopped him and tried to arrest him, and Corporal Ruehling arrested him without probable cause. The officers moved for summary judgment, asserting qualified immunity. The district court granted the defendants' motion and dismissed Harrod's case. He timely appealed.[2]

---

[2] Harrod brought two additional claims we do not address. *First*, Harrod claimed that the officers used excessive force against him. But the district court held that Harrod "abandoned" these claims. Op., R. 61, PageID 450. Because he does not contest that ruling on appeal, he has forfeited any arguments on his excessive force claim. *See Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021). *Second*, in addition to suing the officers, Harrod sued the City of Tullahoma. But he does not raise any standalone arguments challenging the district court's ruling for the City. We thus need not independently address his claim against the City.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *See Harris v. City of Saginaw*, 62 F.4th 1028, 1032 (6th Cir. 2023). Summary judgment is appropriate if there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). We make that determination viewing the evidence in the light most favorable to the nonmoving party. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016).

## ANALYSIS

Harrod claims that the district court erred in granting summary judgment to Officer Lee and Corporal Ruehling on their qualified immunity defense. To overcome that defense, Harrod must show that the officers (1) violated constitutional rights that were (2) clearly established at the time they were violated. *See Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). We address Harrod's claims against each officer in turn, concluding that he doesn't clear qualified immunity's "high bar" as to either of them. *Murray v. Dep't of Corr.*, 29 F.4th 779, 790 (6th Cir. 2022) (citation omitted).

### I.    Officer Lee

Harrod argues that Officer Lee unlawfully seized him both when (1) she first stopped him and grabbed his shirt; and (2) when she grabbed his hand and tried to handcuff him. The Fourth Amendment prohibits the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. Its protections apply both to "traditional arrest[s]" and to "investigatory stops," sometimes called *Terry* stops, that fall short of arrest. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).

As we explain below, Officer Lee's preliminary stop did not constitute an unlawful seizure. And our caselaw did not clearly establish Harrod's right to be free of handcuffs under the circumstances. As a result, qualified immunity bars Harrod's claims against Officer Lee.

### A.      Officer Lee's *Terry* Stop

Harrod argues that Officer Lee's first stop was unconstitutional because she lacked reasonable suspicion to temporarily seize and investigate him. The parties agree that this was a *Terry* stop, not an arrest. For a *Terry* stop, an officer must have a "reasonable, articulable suspicion that a person has been, is, or is about to be engaged in criminal activity." *United States v. Williams*, 615 F.3d 657, 666 (6th Cir. 2010) (citation omitted). When reviewing a stop's reasonableness, we "eschew[] bright-line rules" and consider "the totality of the circumstances." *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

Our decision in *United States v. Smith* guides our analysis. 594 F.3d 530 (6th Cir. 2010). There, officers responded to an early-morning emergency 911 call from an apartment complex in a "high-crime, high-drug" neighborhood. *Id.* at 532. The dispatcher told officers that, through the phone, "it sounded like [there] was a struggle inside of the apartment building." *Id.* at 540. As the defendant opened the building's door to leave, officers rushed in. They asked the defendant for his name, where he had come from, and what he was doing. He gave vague answers and tried pushing past them with his head down. We held that, based on those circumstances, officers had reasonable suspicion to stop him. *Id.* at 539.

The same conclusion follows here. Officer Lee was responding to a 911 call about a man kicking a woman's door down and entering her apartment. When Officer Lee arrived at the building, she heard banging from upstairs, watched Harrod come downstairs, and encountered him leaving the building. Harrod responded brusquely to Officer Lee's questions and tried to walk past

her, even as she held her hand out. As in *Smith*, Officer Lee reasonably suspected Harrod had engaged in criminal activity, giving her a constitutional basis to grab his shirt for an investigatory stop.

Harrod does not convince us otherwise. He first argues that Officer Lee lacked reasonable suspicion because "the 911 caller never articulated the elements" of any crime. Appellant's Br. at 16. But even for probable cause—a higher bar than reasonable suspicion—an officer doesn't need "proof of each element." *Thacker*, 328 F.3d at 256; *see also Hoover v. Walsh*, 682 F.3d 481, 494, 499 (6th Cir. 2012). Harrod's cases do not show reasonable suspicion works differently in this respect.

Next, Harrod claims "[o]fficers generally may not seize a suspect to investigate a non-serious, completed misdemeanor." Appellant's Br. at 25. But he misses the mark in three ways. *First*, Tennessee defines some stalking and domestic violence offenses as felonies, Tenn. Code Ann. §§ 39-13-111(c)(3), -17-315(b)–(c), and Officer Lee could have had reasonable suspicion Harrod had committed one of those offenses. *Second*, Harrod relies on *United States v. Jones*, which involved officers stopping a person suspected of having already committed a misdemeanor, not of engaging in ongoing criminal activity. 953 F.3d 433, 434–35 (6th Cir. 2020). Given that Officer Lee heard banging and saw Harrod outside the apartment right as she arrived, she could reasonably have believed the domestic incident was still happening. Thus, it's not clear that *Jones* applies. *Third*, even if it does, *Jones* rejected setting a bright-line rule regarding the permissibility of *Terry* stops to investigate completed misdemeanors. *Id.* at 436–38. Instead, we held that a stop's reasonableness "turns on the nature of the crime, how long ago the suspect committed it, and the ongoing risk of the individual to the public safety," not on the crime's classification. *Id.* at 437. After Harrod brushed past her outstretched arm and barely answered her question, Officer Lee

could have reasonably thought that Harrod had just committed domestic violence, and that stopping him would prevent him from committing more violence or fleeing. *Id.* at 437–38.

Finally, Harrod contends Officer Lee lacked information showing he was the man the 911 caller described. True, Officer Lee didn't know the suspect's physical description. Yet her observations at the scene and Harrod's "temporal and physical proximity to the reported crime" sufficed to form reasonable suspicion that Harrod was the person the caller had observed. *United States v. Atkins*, 513 F. App'x 577, 580 (6th Cir. 2013).

Thus, Officer Lee's initial *Terry* stop did not violate Harrod's Fourth Amendment rights. We need not opine on whether those rights were clearly established.

### B.      Officer Lee's Attempt to Handcuff Harrod

Harrod then claims that by grabbing his hand to turn and handcuff him, Officer Lee arrested him without probable cause. If Officer Lee's actions constituted an arrest, she needed probable cause. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). But the parties dispute whether Officer Lee's first attempt to handcuff Harrod—when she grabbed his hand and turned him toward a parked car—was an arrest or an investigatory stop only needing reasonable suspicion.

While there is no "bright-line rule" for what constitutes an arrest, *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012), we have held that officers may handcuff someone during a *Terry* stop without transforming the interaction into an arrest if "the circumstances warrant that precaution," *see Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999). For example, if officers know "specific facts" suggesting a person they've *Terry*-stopped "poses a risk of flight or of violence to the officers," they can apply handcuffs. *See Brown v. Lewis*, 779 F.3d 401, 415 (6th Cir. 2015).

In view of this caselaw, Harrod's right to be free from handcuffs was not clearly established, and qualified immunity shields Officer Lee. Recall that to overcome qualified immunity, Harrod would need to show Officer Lee violated his "clearly established" rights. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established when its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (citation omitted). Here, a reasonable officer could have believed that handcuffing Harrod as he backed away, provided terse responses to questions, and attempted to evade the *Terry* stop did not violate his constitutional rights, and instead was necessary to accomplish a brief investigatory stop. As a result, Officer Lee is entitled to qualified immunity as to Harrod's handcuffing claim.

Harrod argues that two of our cases—*Smoak v. Hall* and *Brown v. Lewis*—clearly establish that Officer Lee violated his rights by handcuffing him. *See* 460 F.3d 768, 781–82 (6th Cir. 2006); 779 F.3d at 416. Neither case does so. In *Smoak* and *Brown*, police handcuffed fully compliant individuals at gunpoint based on ambiguous information from dispatch. *See Smoak*, 460 F.3d at 781–82; *Brown*, 779 F.3d at 409, 414. As a result, in both cases, we held that the initial *Terry* stops had escalated into arrests without probable cause. *See Smoak*, 460 F.3d at 782; *Brown*, 779 F.3d at 416. This case differs in important ways. Officer Lee's stop was significantly less intrusive than those in *Smoak* and *Brown*, and, unlike in those cases, Harrod did *not* comply with the officer's early attempts to stop him. Therefore, *Smoak* and *Brown* do not clearly establish the rights Harrod seeks to vindicate.

## II. Corporal Ruehling

Harrod next contends that Corporal Ruehling lacked probable cause to arrest him for resisting arrest and aggravated assault. As noted above, an officer must have probable cause to

arrest a person without a warrant. *Wesby*, 583 U.S. at 56. Probable cause exists where a "prudent man" in the officer's position would believe the suspect "had committed or was committing an offense." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). We consider "all facts and circumstances" the officer knew "at the time of an arrest." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citation and emphasis omitted).

First, the charge for resisting arrest. While driving, Corporal Ruehling phoned the 911 caller directly. The caller told him the perpetrator was wearing an orange shirt and "fighting the cops." Ruehling Dep., R. 33-3, PageID 210. As Corporal Ruehling arrived, he "saw the very tail end of the encounter between Mr. Harrod and Officer Lee," when Officer Lee fell to the ground and Harrod broke free and ran away. *Id.* at PageID 208. A reasonable officer in his shoes could have thought Harrod had unlawfully resisted arrest, which Tennessee defines as "using force" to "intentionally prevent or obstruct" an officer "from effecting a stop, frisk, halt, [or] arrest." Tenn. Code Ann. § 39-16-602(a).

We find Harrod's counterarguments unpersuasive. He argues that Corporal Ruehling lacked probable cause because Harrod did not intend to resist arrest. But he gets probable cause backwards. We focus not on his subjective intent, but on Corporal Ruehling's objective reasonableness. Next, Harrod cites *Brinegar v. United States*, 338 U.S. 160 (1949), to assert that the Fourth Amendment required Corporal Ruehling to use "reasonable caution" before arresting him, Appellant's Br. at 34 (citation omitted). Harrod misreads that portion of *Brinegar*, which merely states that probable cause involves what "a man of reasonable caution" would perceive in the officer's place. 338 U.S. at 175–76 (citation omitted). As we've discussed, a reasonably

cautious officer could have thought Harrod had resisted arrest. So Corporal Ruehling didn't violate Harrod's Fourth Amendment rights by arresting him on that ground.

As for the aggravated-assault charge, we start by summarizing how our caselaw has developed. When Harrod filed suit, *Howse v. Hodous*, 953 F.3d 402 (6th Cir. 2020), was the law of our circuit. In *Howse*, we held that when officers arrest a suspect on multiple charges, "[a]s long as the arrest is supported by probable cause on one charge," the plaintiff can't sue based on the others. *Id.* at 409. Citing *Howse*, the district court dismissed Harrod's arguments on aggravated assault without evaluating Corporal Ruehling's basis for arresting him on that charge. While Harrod appealed his case, the Supreme Court decided *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024), which called our approach in *Howse* into question. It held that in the context of malicious prosecution claims, an officer may violate the Fourth Amendment "if an invalid charge" leads to detention, even "when a valid charge has also been brought." *See id.* at 563. Harrod argues that *Chiaverini* renders Corporal Ruehling liable for arresting him for aggravated assault, irrespective of whether Corporal Ruehling had probable cause to believe Harrod had resisted arrest.

We start and end with the "clearly established" prong of qualified immunity. *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). Even if Corporal Ruehling violated Harrod's rights by arresting him for aggravated assault without basis—a question we do not address[3]—by Harrod's own argument, his rights were established by the *Chiaverini* decision in 2024, not as of his 2020 arrest. So Harrod's claims fail to overcome Corporal Ruehling's qualified-immunity defense.

---

[3] To rule on the constitutional violation, we'd need to decide complicated questions the district court didn't reach, like whether *Chiaverini* applies both to false arrests and malicious prosecutions, and whether Harrod's aggravated-assault charge "caused" his detention independently of his valid charge for resisting arrest. We do not opine on those issues.

## CONCLUSION

We affirm the district court's grant of summary judgment to Officer Lee and Corporal Ruehling.