NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0879n.06

No. 13-3543

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 08, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TANEA WILSON, next Friend for Minor, T.W., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| KEVIN MARTIN, in his official capacity as Chief of | ) | THE NORTHERN DISTRICT OF |
| Police; CHARLES H. GODFREY, in his individual | ) | OHIO |
| and official capacities as City of Lima Police Officer; | ) | |
| CITY OF LIMA, Through the City of Lima Police | ) | |
| Department, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| NATHAN GARLOCK, in his individual and official | ) | |
| capacities as City of Lima Police Officer; MATTHEW | ) | |
| WOODWORTH, in his individual and official | ) | |
| capacities as City of Lima Police Officer; SCOTT | ) | |
| BOETTIGER, in his individual and official capacities | ) | |
| as City of Lima Police Officer, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: COLE, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. City of Lima police officers arrested and detained T.W., an 11 year-old girl, after she extended both middle fingers toward two police officers. She later brought this lawsuit under 42 U.S.C. § 1983, claiming violations of her rights under the First and Fourth Amendments. The officers moved to dismiss T.W.'s claims on qualified-immunity grounds. The district court granted the motion as to some claims, but denied it as to T.W.'s claims for false arrest,

false imprisonment, unlawful seizure and detention, and retaliation. The officers now challenge the denial. We reject their arguments and affirm.

I.

In reviewing the district court's decision whether to dismiss T.W.'s claims under Rule 12(b)(6), we take her allegations in the complaint as true. *See Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

By way of background, in January 2008 a Lima police officer stormed the residence of T.W.'s mother, Tarika Wilson, in search of a criminal suspect. During the incident, T.W.'s mother was unarmed and huddled with her five children, including T.W. Apparently by accident     perhaps in a crossfire     the officer shot T.W.'s mother and 14 month-old brother. T.W.'s mother died; her brother survived. In response, T.W.'s family filed a wrongful-death lawsuit against the officers involved.

About three years later, Officer Nathan Garlock responded to a dispatch about a street fight in Lima. Upon arriving he saw a group of youths, including T.W., walking in the street. The youths were no longer fighting. T.W. broke away from them to walk home. As she did so, she extended both of her middle fingers toward Officer Garlock's car. In response, Garlock yelled at T.W.: "Come here. Come here right now or you're gonna end up being handcuffed." T.W. told Garlock that her grandmother had forbidden her to speak to the police. He replied, "I don't care what your grandma says, come here." T.W. continued to walk home. Garlock pursued T.W. and yelled again, "Hey, when I tell you to stop, you stop!" Garlock then grabbed T.W. from behind, pulled her hands behind her, and pushed her forward to place her under arrest. Officer Matthew Woodworth joined

and helped Garlock to handcuff T.W. The two officers, both much larger than T.W., pulled her to the police cruiser.

Garlock and Woodworth then drove T.W. to the police station. There, Garlock told Officer Scott Boettiger that T.W. was "Tarika Wilson's daughter." At Boettiger's direction, Garlock charged T.W. with persistent disorderly conduct.

This lawsuit and appeal followed.

## II.

We review de novo the district court's denial of qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011). Qualified immunity shields government officials from liability for civil damages. "Determinations of qualified immunity require us to answer two questions: first, whether the officer violated a constitutional right; and second, whether that right was clearly established in light of the specific context of the case." *Id.*

## A.

We first consider T.W.'s claims based upon the Fourth Amendment. A citizen's right to be free from arrest without probable cause is clearly established. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). T.W. alleges that Officers Garlock, Woodworth, and Boettiger violated that right when they arrested and detained her without probable cause for doing so. The officers respond that T.W. should have stopped walking away when Garlock ordered her to, and that her failure to do so "resulted in probable cause sufficient to justify her arrest," Def. Br. at 6.

Probable cause is "reasonable grounds for belief" that a crime has been committed. *United States v. Padro*, 52 F.3d 120, 122 23 (6th Cir. 1995). The officers say they had probable cause to

think that T.W. committed three offense here. The first two are disorderly conduct in violation of O.R.C. § 2917.11(A)(2) and (A)(3). But even the officers concede that "profanity alone is insufficient to establish criminal behavior," Def. Br. at 14; instead, to violate either of these sections, a person must use profanity recklessly, "in a situation where violence is a likely result." *Id.* It is true, as the officers point out, that an obscene gesture towards a police officer may amount to disorderly conduct, "depending on the circumstances." *State v. Wood*, 112 Ohio App. 3d 621, 628 (1996). But the circumstances here, as alleged in the complaint at least, are that an 11 year-old girl raised her middle fingers toward an adult male police officer. Those circumstances did not create a situation where violence was a likely result. (And if violence had resulted, the officers would be facing more claims than they are now.) T.W.'s gesture was crude, not criminal; and the officers were patently without probable cause to arrest her for it.

The third offense for which the officers say there was probable cause was "obstructing official business" in violation of O.R.C. § 2921.21(A). The violation here, the officers say, was T.W.'s failure to stop walking away when Garlock told her to stop. Suffice it to say that    again based on the allegations in the complaint    the officers had no legal basis to order T.W. to stop in the first place. Thus, at this stage of the litigation, the officers are not entitled to qualified immunity as to T.W.'s claims for false arrest, false imprisonment, and unlawful seizure and detention.

B.

The officers also argue that they are entitled to qualified immunity as to T.W.'s claim that they arrested her in retaliation for her family's wrongful-death lawsuit concerning her mother's death. To state a § 1983 claim for retaliation, a plaintiff must plead that "(1) the plaintiff engaged

in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 723 (6th Cir. 2010) (internal quotation marks omitted). Only the third prong is at issue here: the officers say that they arrested T.W. not in retaliation for the wrongful-death suit, but because they had probable cause to arrest her. As explained above, however, T.W.'s complaint alleges facts showing otherwise. Hence the district court was correct to deny qualified immunity as to this claim as well.

Finally, for the reasons stated by the district court, we agree that Officer Boettiger is not entitled to qualified immunity at this stage of the litigation.

The district court's judgment is affirmed.