SUTTON, Circuit Judge.
Fits of rudeness or lack of gratitude may violate the Golden Rule. But that doesn't make them illegal or for that matter punishable or for that matter grounds for a seizure.
Officer Matthew Minard pulled over Debra Cruise-Gulyas for speeding. He wrote her a ticket for a lesser violation, known as a non-moving violation. As she drove away, apparently ungrateful for the reduction, she made an all-too-familiar gesture at Minard with her hand and without four of her fingers showing. That did not make Minard happy. He pulled her over again and changed the ticket to a moving violation-a *496 speeding offense and what counts as a more serious violation of Michigan law. Because Cruise-Gulyas did not break any law that would justify the second stop and at most was exercising her free speech rights, we affirm the district court's order denying Officer Minard's Civil Rule 12(c) motion for judgment on the pleadings.
Minard, a police officer in the city of Taylor, Michigan, stopped Cruise-Gulyas in June 2017 for speeding. But he decided to show her leniency and wrote her a ticket for a non-moving violation. As she drove away, Cruise-Gulyas repaid Minard's kindness by raising her middle finger at him. Minard pulled Cruise-Gulyas over a second time, less than 100 yards from where the initial stop occurred, and amended the ticket to a speeding violation.
Cruise-Gulyas sued Minard under § 1983, alleging that he violated her constitutional rights by pulling her over a second time and changing the original ticket to a more serious violation. She claims he unreasonably seized her in violation of the Fourth (and Fourteenth) Amendment; retaliated against her because of her protected speech in violation of the First (and Fourteenth) Amendment; and restricted her liberty in violation of the Due Process Clause of the Fourteenth Amendment.
Minard moved for judgment on the pleadings based on qualified immunity. The district court denied the motion, reasoning that Cruise-Gulyas could not be stopped a second time in the absence of a new violation of the law, that she had a free speech right to make the gesture, and that the gesture did not violate any identified law. Minard filed an interlocutory appeal, arguing that he is entitled to qualified immunity because, even assuming he violated Cruise-Gulyas's constitutional rights, those rights were not clearly established.
Qualified immunity protects police from personal liability unless they violate a person's clearly established constitutional or statutory rights. Kisela v. Hughes , --- U.S. ----, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018). The rights asserted by Cruise-Gulyas meet that standard.
Fourth Amendment . Under the facts set forth in the complaint, Minard violated Cruise-Gulyas's right to be free from an unreasonable seizure by stopping her a second time.
All agree that Minard seized Cruise-Gulyas within the meaning of the Fourth Amendment when he pulled her over the second time. Whren v. United States , 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). To justify that stop, Minard needed probable cause that Cruise-Gulyas had committed a civil traffic violation, id. at 810, 116 S.Ct. 1769, or reasonable suspicion that she had committed a crime, United States v. Arvizu , 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). He could not rely on the driving infraction to satisfy that requirement. Any authority to seize her in connection with that infraction ended when the first stop concluded. Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015).
That leaves Cruise-Gulyas's gesture as a potential ground for the second stop. But the gesture did not violate any identified law. The officer indeed has not argued to the contrary. Nor does her gesture on its own create probable cause or reasonable suspicion that she violated any law. Wilson v. Martin explained that, where a girl extended her middle fingers at officers and walked away, her "gesture was crude, not criminal," and gave the officers "no legal basis to order [her] to stop." 549 F. App'x 309, 311 (6th Cir. 2013) ; see Swartz v. Insogna , 704 F.3d 105, 110 (2d Cir. 2013) ("This ancient gesture of insult is not the *497 basis for a reasonable suspicion of a traffic violation or impending criminal activity."). All in all, Officer Minard clearly lacked authority to stop Cruise-Gulyas a second time.
Minard counters that Wilson concerns whether officers had probable cause to arrest a girl who extended her middle fingers at them, not about whether they could stop her. But Wilson says that the girl's salute provided the officers "no legal basis to order [her] to stop." 549 F. App'x at 311. Minard should have known better here.
Minard adds that no case put him on notice about this fact pattern-that a second stop after a first stop supported by probable cause violated Cruise-Gulyas's Fourth Amendment rights. Defined at that specific level of generality, he says, the case law did not clearly prohibit the stop. But Minard misses a point. In making his argument, he fails to acknowledge that the second stop was distinct from the first stop, not a continuation of it. At this stage, we must accept Cruise-Gulyas's allegations-that Minard stopped her twice-as true. In that light, case law clearly requires independent justification for the second stop. See Rodriguez , 135 S.Ct. at 1614. No matter how he slices it, Cruise-Gulyas's crude gesture could not provide that new justification. See Wilson , 549 F. App'x at 311. While these cases are not factually identical, they establish clear, specific principles that answer the questions this case asks. See District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589-90, 199 L.Ed.2d 453 (2018). At this stage, Cruise-Gulyas's allegations survive Minard's motion for judgment on the pleadings based on qualified immunity.
First Amendment . Cruise-Gulyas also alleges that Minard violated her free speech rights by stopping her the second time in retaliation for her expressive, if vulgar, gesture. To succeed, she must show that (1) she engaged in protected conduct, (2) Minard took an adverse action against her that would deter an ordinary person from continuing to engage in that conduct, and (3) her protected conduct motivated Minard at least in part. Thaddeus-X v. Blatter , 175 F.3d 378, 394 (6th Cir. 1999) (en banc).
Precedent clearly establishes the first and second elements. Any reasonable officer would know that a citizen who raises her middle finger engages in speech protected by the First Amendment. Sandul v. Larion , 119 F.3d 1250, 1255 (6th Cir. 1997) (gesturing with the middle finger is protected speech); see Cohen v. California , 403 U.S. 15, 19, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).
An officer who seizes a person for Fourth Amendment purposes without proper justification and issues her a more severe ticket clearly commits an adverse action that would deter her from repeating that conduct in the future. The Constitution suggests as much by prohibiting unreasonable searches and seizures. U.S. Const. amend. IV. And we said as much in Center for Bio-Ethical Reform, Inc. v. City of Springboro , holding that it is clearly established that "police action to seize a ... person" is adverse given that "the Founders endeavored scrupulously to protect" an individual's "liberty of movement" in the Fourth Amendment. 477 F.3d 807, 822, 824 (6th Cir. 2007). In view of the reality that something "as trivial as failing to hold a birthday party for a public employee" amounts to retaliation if done because the employee exercised his speech rights, Rutan v. Republican Party of Ill. , 497 U.S. 62, 76 n.8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (quotation omitted), an unwarranted police stop, a far greater intrusion on liberty, must satisfy the test too.
*498 Cruise-Gulyas also meets the third element, a fact-intensive question in this instance. She alleged in the complaint that Minard stopped her because she made a crude gesture. That counts as a cognizable, and clear, violation of her speech rights.
In his reply brief, Minard analogizes his case to a prosecutor who might reasonably think he could take a plea deal off the table if a defendant behaved offensively or a judge who might reasonably think that she could increase a defendant's sentence if the defendant raised his middle finger at her right after she read her sentence from the bench. Judges, it is true, have wide latitude to consider expressive conduct during sentencing. See 18 U.S.C. § 3661 ; United States v. White Twin , 682 F.3d 773, 778-79 (8th Cir. 2012). But we need not wade through those complicated questions now because these facts differ materially. As alleged, the first stop had ended, a constitutionally significant event, before the officer initiated the second, unjustified stop. The Supreme Court has said that any justification for the first stop ceases when that stop ends. Rodriguez , 135 S.Ct. at 1614. These facts more closely resemble a prosecutor who tries to revoke a defendant's deal a few days after everyone has agreed to it or a judge who hauls the defendant back into court a week or two after imposing a sentence based on the defendant's after-the-fact speech. Those examples seem more problematic and more in keeping with today's decision. Minard, in short, clearly had no proper basis for seizing Cruise-Gulyas a second time.
Fourteenth Amendment . Cruise-Gulyas also brought a substantive due process claim under the Fourteenth Amendment. The district court allowed the claim to proceed, offering no independent analysis of it. We do not reach that claim here because Minard offered no analysis of it distinct from his discussion of the First and Fourth Amendment claims in his brief on appeal. He has therefore forfeited any argument that we treat the due process claim differently from those claims at this stage in the litigation. See Babick v. Berghuis , 620 F.3d 571, 577 (6th Cir. 2010).
We affirm.